IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
0:25cv60542

KYLE PIPER, on behalf of himself
and others similarly situated,

      Plaintiff

v.

REALTY WHOLESALERS, INC.,
a Florida for-profit corporation, and
WEINTRAUB & WEINTRAUB, P.A.,
a Florida professional association

      Defendants,
_____/

## NOTICE OF REMOVAL

      Defendant Realty Wholesalers, Inc., ("RWI") files this Notice of Removal, and, in support, states as follows:

      1.      This lawsuit is a civil action within the meaning of the Acts of Congress relating to the removal of cases. Plaintiff Kyle Piper ("Plaintiff"), instituted the civil action on February 11, 2025 by filing a Complaint for Violations of the Real Estate Settlement Practices Act ("RESPA"), 12 USC §§ 2607 & 2608 ("Complaint"), which was assigned Case Number 25-001922 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida

      2.      Plaintiffs causes of action are: Count I Violation of 12 USC § 2607, Count II Violation of 12 USC § 2608, Count III Violation of Florida Deceptive and Unfair Trade Practices Act § 501.21, and Count IV  Unjust Enrichment against Codefendant Weintraub.

      3.      RHI was served on February 21, 2025. Exhibit A.  A true and correct copy of all process and pleadings filed in the state court is attached hereto as Exhibit B. Because this Notice

of Removal is filed within thirty days after service of the Summons and Complaint upon RHI, it is timely under 28 U.S.C. § 1446(b).

4.      This action originally could have been filed in this Court under 28 U.S.C. § 1331 because it presents a federal question under RESPA.

5.      After the filing of this Notice of Removal, RHI will promptly give written notice thereof to Plaintiff and file a copy with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, which shall effect the removal, and the state court shall proceed no further unless and until the case is remanded. A copy of the form filed in the state court is attached hereto as Exhibit C.

6.      The prerequisites for removal under 28 U.S.C. § 1441 have been met.

WHEREFORE, RWI, desiring to remove this case to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, being the division of said Court for the county in which said case is pending, prays that the filing of this Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, shall effect the removal of said case to this Court.

**JEFFREY B. SHALEK, ESQ, P.A.**
*Attorney for Realty Wholesalers, Inc.*
3020 NE 32nd Avenue, Suite 226
Ft. Lauderdale, Fl 33308
Telephone: (954) 408-2060


By:___/s/ Jeffrey B. Shalek_____

JEFFREY B. SHALEK
Florida Bar No.  996221
Primary: jeffshalek@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 21, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document was served this day on:

Counsel to Plaintiff Kyle Piper
darren@newhartlegal.com
Newhart Legal, P.A.
Darren R. Newhart, Esq.
14611 Southern Blvd, #1351
Loxahatchee, FL 33470

Counsel to Plaintiff Kyle Piper
jshaw@shawlewenz.com
kslaven@shawlewenz.com
gmorales@shawlewenz.com
avazquez@shawlewenz.com
lgrealy@shawlewenz.com
Shaw Lewenz, LLLP
Jordan Shaw, Esq.
Kimberly A. Slaven-Hauth, Esq.
Gabriel Morales, Esq.
110 SE 6th Street, Suite 2900
Fort Lauderdale, Florida 33301

either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Filing.

/s/Jeffrey B. Shalek
Jeffrey B. Shalek

EXHIBIT A

# RETURN OF SERVICE

| State of Florida | County of Broward | Circuit Court |
|---|---|---|

Case Number: CACE-25-001922

Plaintiff: **KYLE PIPER, on behalf of himself and all others similarly situated**
vs.
Defendant: **REALTY WHOLESALERS, INC., a Florida for-profit corporation, WEINTRAUB & WEINTRAUB, P.A., a Florida professional association**

For:
JORDAN A. SHAW, ESQ.
SHAW LEWENZ, LLLP
110 SE 6TH STREET
#2900
FT LAUDERDALE, FL 33301

Received by Caplan, Caplan & Caplan Process Servers on the 19th day of February, 2025 at 10:12 am to be served on **REALTY WHOLESALERS, INC. BY SERVING ITS REGISTERED AGENT: WEINTRAUB, PETER, ESQ., 7700 CONGRESS AVENUE, STE 1110, BOCA RATON, FL 33487.**

I, Erick Maillard, do hereby affirm that on the **21st day of February, 2025** at **12:00 pm, I:**

CORPORATE-R.A.EMPLOYEE, served a Corporation by delivering a true copy of the **SUMMONS, CLASS ACTION COMPLAINT and EXHIBITS** with the date and hour of service endorsed thereon by me, to: **LISA PESSEL** as **EMPLOYEE OF THE REGISTERED AGENT** for **REALTY WHOLESALERS, INC.**, at the address of: **7700 CONGRESS AVENUE, STE 1110, BOCA RATON, FL 33487**, and informed said person of the contents therein, in compliance with F.S. 48.081(3) (A). Registered agent failed to be available between the statutory hours of 10AM- 12PM. (3)(a) As an alternative to all of the foregoing, process may be served on the agent designated by the corporation under s. 48.091. However, if service cannot be made on a registered agent because of failure to comply with s. 48.091, service of process shall be permitted on any employee of the registered agent. A person attempting to serve process pursuant to this paragraph may serve the process on any employee of the registered agent during the first attempt at service even if the registered agent is temporarily absent from his or her office. Every corporation shall keep the registered office open from 10 a.m. to 12 noon each day except Saturdays, Sundays, and legal holidays, and shall keep one or more registered agents on whom process may be served at the office during these hours. The corporation shall keep a sign posted in the office in some conspicuous place designating the name of the corporation and the name of its registered agent on whom process may be served.

 I certify that I am over the age of 18, have no interest in the above action, Under penalty of perjury, I declare that I have read the foregoing and that the facts stated in it are true, that I am a Certified Process Server in good standing in the judicial circuit in which the process was served in the county in which this defendant/witness was served.   Pursuant to FS 92.525(2) and 28 USC Section 1746, no notary is required.

**Erick Maillard**
907

**Caplan, Caplan & Caplan Process Servers
351 SW 136th Avenue
Suite 207
Davie, FL 33325
(305) 374-3426**

Our Job Serial Number: CPN-2025006062
Service Fee: _____

Filing # 216997166 E-Filed 02/18/2025 10:32:09 AM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

KYLE PIPER,                                         CASE NO.: CACE-25-001922
on behalf of himself                               **CLASS REPRESENTATION**
and all others
similarly situated,

      Plaintiff,

v.

REALTY WHOLESALERS, INC.,
a Florida for-profit corporation,
WEINTRAUB & WEINTRAUB, P.A.,
a Florida professional association,

      Defendants.

_____/

**THE STATE OF FLORIDA:**
TO All and Singular the Sheriffs of said State

      **YOU ARE HEREBY COMMANDED** to serve this **Summons and a copy of the Complaint** in the above styled cause upon the Defendant:

REALTY WHOLESALERS, INC.
**By Serving Its Register Agent**:
WEINTRAUB, PETER, ESQ.
7700 Congress Avenue
1110
BOCA RATON, FL 33487

      Each Defendant is hereby required to serve written defenses to the Complaint or Petition on Plaintiff's attorney, whose name and address is:

Jordan A. Shaw, Esq.
SHAW LEWENZ, LLLP
110 S.E. 6th Street, Suite 2900
Fort Lauderdale, Florida 33301
jshaw@shawlewenz.com

within twenty (20) days after service of this Summons upon Defendant, exclusive of the day or service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

Page 1 of 2

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 02/18/2025 10:32:07 AM.****

DELIVERED 2/21/2025 12:00 PM
SERVER PM
LICENSE 907

WITNESS my hand and seal of said Court ⎯⎯⎯⎯⎯⎯ FEB 18 2025 ⎯⎯⎯⎯⎯⎯, 2025.

BRENDA D. FORMAN
As Clerk of said Court

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
As Deputy

BRENDA D. FORMAN

## AMERICANS WITH DISABILITIES ACT OF 1990

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 470, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

**Si usted es una persona con discapacidad que necesita un alojamiento a fin de participar en este procedimiento, usted tiene el derecho, sin ningún coste para usted, para el suministro de cierta asistencia. Póngase en contacto con el coordinador de ADA en la Oficina del Administrador Judicial; Broward County Courthouse, 201 SE 6th Street, Room 470, Fort Lauderdale, FL 33301; (954) 831-7721; dentro de 7 días desde la recepción de esta notificación Summons; si es vista o voz alterada, llamada 711.**

**Si ou se yon moun ak yon maladi/enfimite ki bezwen logement tout pou yo patisipe nan demach sa a, ou gen, gratis pou nou, pou pwovizyon asistans sèten. Souple kontakte kòdonatè ADA a nan biwo tribinal administratè, tribinal eta Broward, 201 SE 6th Street, Espace 470, Fort Lauderdale, nan 33301, (954) 831-7721, nan yon peryòd 7 jou travay de réception de sa Summons, Si ou se tande ou tande vwa ki andikape, rele 711.**

EXHIBIT B

Filing # 216529995 E-Filed 02/11/2025 02:26:40 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE 25-001922

**CLASS REPRESENTATION**
**JURY TRIAL DEMANDED**

KYLE PIPER,
on behalf of himself
and all others
similarly situated,

      Plaintiff,

v.

REALTY WHOLESALERS, INC.,
a Florida for-profit corporation,
WEINTRAUB & WEINTRAUB, P.A.,
a Florida professional association,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Kyle Piper ("**Plaintiff**"), on behalf of himself and all others similarly situated, through counsel and pursuant to rules 1.100, 1.110, and 1.220 of the Florida Rules of Civil Procedure, hereby sues Defendant, Realty Wholesalers, Inc. ("**Realty**") and Weintraub & Weintraub, P.A., ("**Weintraub**") (collectively, "**Defendants**"), and, in support thereof, states the following.

## NATURE OF ACTION

1.      The complexities of real estate transactions often create opportunities for abuse that can cause needless harm to consumers. To address these risks, Congress enacted the Real Estate Settlement Procedures Act ("**RESPA**") in 1974. Section 9 of RESPA specifically prohibits anyone selling property that will be purchased with a mortgage subject to RESPA from directly or indirectly requiring the buyer to obtain title insurance from a particular title company, regardless of whether any referral fees are paid. 12 U.S.C. § 2608.

1.      Defendants have orchestrated an unlawful scheme by conditioning real estate sales

1

on the buyer's use of a specific title agent—a practice prohibited under Sections 8 and 9 of RESPA. In Plaintiff's case, the purchase of property in Broward County, Florida, was contingent upon a contract addendum requiring the use of a title agent, Defendant Weintraub, chosen by Defendant Realty. Plaintiff now looks to hold Defendants accountable not only for himself but for all similarly situated individuals by pursuing this class action for RESPA violations. Plaintiff and the classes he seeks to represent respectfully request the Court award all available statutory and actual damages under RESPA.

## JURISDICTION, VENUE, AND PARTIES

2.      This is an action against Defendants on behalf of a class of similarly situated persons for actual damages more than fifty thousand dollars ($50,000.00) exclusive of interest, attorneys' fees, and costs.

3.      Plaintiff is an individual, sui juris, residing in Broward County, Florida.

4.      Defendant Realty is a Florida corporation organized and existing under the laws of the State of Florida, conducting business in Broward County, Florida, and having its principal place of business in Palm Beach County, Florida.

5.      Defendant Weintraub is a Florida professional association organized and existing under the laws of the State of Florida, conducting business in Broward County, Florida, and having its principal place of business in Palm Beach County, Florida.

6.      Venue is proper in Broward County, Florida, under Chapter 47 of the Florida Statutes as the cause of action accrued in Broward County, Florida.

7.      All conditions precedent to bringing this action have occurred, been performed and/or have otherwise been excused, satisfied, or waived.

## GENERAL ALLEGATIONS

2

8.      On February 26, 2024, Defendant Realty listed the real property located at 2517 NW 108th Terrace, Sunrise, Florida 33322 (the "**Property**"), for sale on the Beaches MLS, Inc. real estate listing service.

9.      A true and correct copy of the listing for the Property is attached as **Exhibit A**.

10.     The MLS listing contained the following (highlighted) remark:



Ex. A (emphasis added).

11.     On February 29, 2024, Plaintiff, as buyer, and Defendant Realty, as seller, entered into a residential contract for the purchase of the Property containing the required addendum.

12.     The contract and addendum were drafted by Defendant Realty and were standard forms used by Defendant Realty when selling property.

13.     A true and correct copy of the contract and the addendum (collectively, the "**Contract**") is attached as **Exhibit B**.

14.     Defendant Realty's addendum is a pre-printed form requiring that "closing shall be held and the title insurance issued by [Defendant Weintraub]" *Id.*

3

15.     As shown, Defendant Realty's addendum—required for prospective buyers to submit offers to purchase the Property—mandated the use of Defendant Weintraub as the title agent and obligated Plaintiff to cover the cost of title insurance.

16.     As shown, the addendum makes clear that Defendant Realty conditioned the sale of the property to Plaintiff on the mandatory use of Defendant Realty as the title agent, and Plaintiff bearing the cost of title insurance.

17.     Defendant Realty has a policy and practice of conditioning the purchase of property on buyers agreeing to pay for title insurance through Defendant Weintraub.

18.     Defendant Realty has a policy and practice of requiring buyers to purchase title insurance from Defendant Weintraub.

19.     As required by Defendant Realty, Plaintiff bought the property and paid for title insurance through Defendant Weintraub.

20.     Upon information and belief, Defendant Realty receives kickbacks from Defendant Weintraub in return for using it as a title agent.

21.     These practices are illegal and violate RESPA.

22.     Plaintiff has engaged the law firm Shaw Lewenz, LLLP and Newhart Legal, P.A. and must pay them attorneys' fees and costs.

## CLASS REPRESENTATION ALLEGATIONS

23.     Plaintiff brings this action pursuant to rules 1.220(b)(1)(B) and 1.220(b)(3) of the Florida Rules of Civil Procedure, on behalf of himself and a class of similarly situated individuals defined as follows:

## CLASS

**All persons or entities who, during the applicable statute of limitations, (1) purchased a residential dwelling sold by**

4

Defendant; (2) with the assistance of a "federally-related mortgage loan" as defined by RESPA; and (2) paid for title insurance through Weintraub & Weintraub, P.A.

*__Plaintiff anticipates the need to amend the class definitions following appropriate discovery.__*

24.    ***Class Exclusions***: The following people are excluded from the Class: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and its current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the Classes; 4) the legal representatives, successors, or assigns of any such excluded persons; 5) Plaintiff's counsel and Defendants' counsel.

25.    ***Numerosity (Rule 1.220(a)(1))***: Although Plaintiff does not know the exact size of the Class, since said information is in the exclusive control of Defendants, Defendant Realty has sold over 100 properties in the last several years. Thus, the Class is so numerous that joinder of all members into one action is impracticable. Based upon the nature and scope of the involved conduct, Plaintiff states that the approximate number in the Class is in excess of forty (40) putative members, who are most likely geographically dispersed throughout Florida.

26.    ***Typicality (Rule 1.220(a)(3))***: Plaintiff's claims are typical of the claims that would be asserted by other members of the Class in that, in proving his claims, Plaintiff will simultaneously prove the claims of all Class members. Plaintiff and each Class member was required to use Defendant Weintraub., as title agent in connection with a real estate transaction covered by RESPA.

27.    ***Commonality (Rule 1.220(a)(2))***:  Plaintiff's and Class members' claims raise predominantly factual and legal questions that can be answered for all Class members through a

single Class-wide proceeding.  Questions of law and fact arising out of Defendant's conduct are common to all members of the Classes, and such common issues of law and fact predominate over any questions affecting only individual members of the Classes.   For example, to resolve the claims, it will be necessary to answer the following questions, each of which can be answered through common, generalized evidence:

a. Whether Defendant Realty's practice of requiring the buyer's submission of an addendum requiring the use of Defendant Weintraub as title agent, and requiring buyers to pay for said title policies, in connection with real estate transactions covered by RESPA, violates RESPA;

b. Whether Defendant Realty receiving kickbacks from Defendant Weintraub for requiring buyers to use Defendant Weintraub as title agent in connection with real estate transactions covered by RESPA violates RESPA.

c. Whether the practices above violate FDUTPA.

d. Whether Defendant Weintraub has been unjustly enriched through the practices above.

28. ***Adequacy (<u>Rule 1.220(a)(4)</u>)***: Plaintiff will fairly and adequately protect the interests of the Class he represents because it is in his best interests to prosecute the claims alleged to obtain full redress due to him for the illegal conduct of which he complains.  Plaintiff's interests do not conflict with the interests of the respective Class because one or more questions of law and/or fact regarding liability are common to all class members and, by prevailing on his own claims, Plaintiff necessarily will establish liability as to other class members.  Plaintiff will fairly and adequately represent the interests of the Class and has no interests that are antagonistic to the

interests of Class members.  Plaintiff has retained counsel experienced in class action litigation and complex civil litigation to prosecute this action on behalf of the Classes.

29.     ***Superiority (Rule 1.220(b)(3))***: With respect to rule 1.220(b)(3) of the Florida Rules of Civil Procedure, a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted herein, given that common questions of law and fact predominate over any individual questions that may arise, and significant economies of time, effort and expense will inure to the benefit of the court and the parties in litigating the common issues on a Class-wide basis instead of a repetitive individual basis; many Class members' individual damage claims are too small to make individual litigation an economically viable alternative, and few Class members have an interest in individually controlling the prosecution of a separate action; despite the relatively small size of many individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a Class action on a cost-effective basis, especially when compared with repetitive individual litigation; given the size of individual Class members' claims, few Class members could afford to seek legal redress individually for the wrongs Defendants committed against them; when the liability of Defendants is adjudicated, claims of all members of the Classes can be determined by the Court; this action will facilitate the orderly and expeditious administration of the Classes' claims, economies of time, effort and expense will be fostered and uniformity of outcome will be ensured; without a class action, the Class members will continue to suffer damages and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the proceeds of its wrongful conduct; and no unusual difficulties are likely to be encountered in the management of this class action. The forum is desirable because all parties are located in or do business in Broward County, Florida.

30.     *Ascertainability*: Members of the Class can be identified, and Class membership ascertained objectively, through Defendants' records.

31.     Plaintiff satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party under rule 1.220(a) of the Florida Rules of Civil Procedure.

32.     In addition to class certification under rule 1.220(b)(3) of the Florida Rules of Civil Procedure, class certification is also appropriate under rule 1.220(b)(2) of the Florida Rules of Civil Procedure because Defendant acted or refused to act on grounds generally applicable to the class, thereby relief appropriate with respect to the class as a whole.

**COUNT I**
**VIOLATION OF 12 U.S.C. § 2607**
**(as to Defendant Realty)**

Plaintiff, reaffirms, realleges, and incorporates by reference paragraphs 1 through 32 above as if fully set forth below.

33.     Plaintiff and the members of the Class are borrowers of "federally related mortgage loans" as defined by RESPA. 12 U.S.C. § 2602(1).

34.     Plaintiff and the members of the Class purchased real property from Defendant, and, as a condition of the purchase, were required to use Weintraub & Weintraub, P.A. as title agent for the transactions.

35.     RESPA prohibits kickbacks in connection with a real estate settlement services involving a federally related mortgage loan. *See* 12 U.S.C. § 2607(a).

36.     Defendant violated RESPA by accepting kickbacks from Weintraub & Weintraub, P.A. in connection with real estate settlement services involving federally related mortgage loans.

37.     As a result, Plaintiff and the members of the class have suffered damages.

**WHEREFORE**, Plaintiff, for himself and the proposed Classes defined here, and for whom they represent, prays for judgment against Defendant, REALTY WHOLESALERS, INC., for violations of RESPA, and requests that the Court:

      a. Certify this action as a class action under Florida Rule of Civil Procedure 1.220;

      b. Appoint the undersigned as Class counsel;

      c. Appoint Plaintiff as Class representative;

      d. Award Plaintiff and members of the Class treble damages under RESPA;

      e. Award statutory costs and attorneys' fees under RESPA, Florida law, and the Florida Rules of Civil Procedure to compensate Plaintiff's counsel for the time and litigation expenses incurred on behalf of the class; and

      a. Issue any other relief that the Court deems just and proper.

## COUNT II
## <u>VIOLATION OF 12 U.S.C. § 2608</u>
### (as to Defendant Realty)

Plaintiff, reaffirms, realleges, and incorporates by reference paragraphs 1 through 32 above as if fully set forth below.

38.    Plaintiff and the members of the Class are borrowers of "federally related mortgage loans" as defined by RESPA. 12 U.S.C. § 2602(1).

39.    Plaintiff and the members of the Class purchased real property from Defendant, and, as a condition of the purchase, were required to use Weintraub & Weintraub, P.A. as title agent for the transactions.

40.     RESPA prohibits a seller from requiring a buyer—either directly or indirectly—to purchase title insurance from a particular title insurance company as a condition of sale. *See* 12 U.S.C. § 2608(a).

41.     Defendant violated RESPA by requiring Plaintiff and the members of the Class to buy title insurance through Weintraub & Weintraub, P.A. in connection with real estate settlement services involving federally related mortgage loans.

42.     As a result, Plaintiff and the members of the class have suffered damages.

**WHEREFORE**, Plaintiff, Kyle Piper, for himself and the proposed Classes defined here, and for whom they represent, prays for judgment against Defendant, REALTY WHOLESALERS, INC., for violations of RESPA, and requests that the Court:

b. Certify this action as a class action under Florida Rule of Civil Procedure 1.220;

c. Appoint the undersigned as Class counsel;

d. Appoint Plaintiff as Class representative;

e. Award Plaintiff and members of the Class treble damages under RESPA;

f. Award statutory costs and attorneys' fees under RESPA, Florida law, and the Florida Rules of Civil Procedure to compensate Plaintiff's counsel for the time and litigation expenses incurred on behalf of the class; and

g. Issue any other relief that the Court deems just and proper.

### COUNT III
### PER SE VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT SECTIONS 501.21, ET SEQ., FLORIDA STATUTES
### (as to Defendant Realty)

43.     Plaintiff, reaffirms, realleges, and incorporates by reference paragraphs 1 through 32 above as if fully set forth below.

10

44.     Defendant engaged in trade or commerce by selling residential real property to Plaintiff and the class members.

45.     RESPA prohibits a seller from requiring a buyer—either directly or indirectly—to purchase title insurance from a particular title insurance company as a condition of sale. *See* 12 U.S.C. § 2608(a).

46.     Defendant violated RESPA by requiring Plaintiff and the members of the Class to buy title insurance through Weintraub & Weintraub, P.A. in connection with real estate settlement services involving federally related mortgage loans.

47.     Defendant's violation of RESPA constitutes a *per se* violation of FDUTPA.

48.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class members have suffered damages including, but not limited to out-of-pocket loss.

49.     As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts or practices alleged herein, Plaintiff and the Class have been damaged and are entitled to an order providing declaratory and injunctive relief and reasonable attorneys' fees and costs to the extent permitted by law.

**WHEREFORE**, Plaintiff, for himself and the proposed Classes defined here, and for whom they represent, prays for judgment against Defendant, REALTY WHOLESALERS, INC., for violations of FDUTPA, and requests that the Court:

a. Certify this action as a class action under Florida Rule of Civil Procedure 1.220;

b. Appoint the undersigned as Class counsel;

c. Appoint Plaintiff as Class representative;

d. Award Plaintiff and members of the Class damages under FDUTPA;

e. Award statutory costs and attorneys' fees under FDUTPA, Florida law, and

the Florida Rules of Civil Procedure to compensate Plaintiff's counsel for

the time and litigation expenses incurred on behalf of the class; and

h. Issue any other relief that the Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT
### (as to Defendant Weintraub)

50.    Plaintiff, reaffirms, realleges, and incorporates by reference paragraphs 1 through 32 above as if fully set forth below.

51.    Plaintiff and the members of the Class conferred a benefit upon Defendant Weintraub through fees paid for title insurance.

52.    Defendant Weintraub voluntarily accepted and retained the benefit and knew of its existence.

53.    Because the practice of requiring Plaintiff and the members of the Class to use and pay for Defendant Weintraub's services violative of RESPA, the circumstances are such that it would be inequitable for Defendant Weintraub to retain the benefit without paying Plaintiff and the members of the Class the full value thereof.

**WHEREFORE**, Plaintiff, for himself and the proposed Classes defined here, and for whom they represent, prays for judgment against Defendant, WEINTRAUB & WEINTRAUB, P.A., for unjust enrichment, and requests that the Court:

a. Certify this action as a class action under Florida Rule of Civil Procedure 1.220;

b. Appoint the undersigned as Class counsel;

c. Appoint Plaintiff as Class representative;

12

d. Award Plaintiff and members of the Class damages through disgorgement of all fees paid to Defendant Weintraub;

e. Award statutory costs and attorneys' fees to the extent provided by Florida law and the Florida Rules of Civil Procedure to compensate Plaintiff's counsel for the time and litigation expenses incurred on behalf of the class; and

i. Issue any other relief that the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff, on behalf of himself and the members of the Classes, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**SHAW LEWENZ, LLLP**
110 SE 6th Street, Suite 2900
Fort Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary:   jshaw@shawlewenz.com;
              kslaven@shawlewenz.com
              gmorales@shawlewenz.com
Secondary: avazquez@shawlewenz.com;
              lgrealy@shawlewenz.com


By:    */s/ Jordan A. Shaw*
        Jordan A. Shaw
        Florida Bar No.: 111771
        Kimberly A. Slaven-Hauth
        Florida Bar No. 117964
        Gabriel E. Morales
        Florida Bar No. 1038778

        *Counsel for Plaintiff and the Classes*

13

**NEWHART LEGAL, P.A.**
14611 Southern Blvd. Suite 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile:  (561) 473-2946
E-mail: darren@newhartlegal.com

By:   /s/ Darren R. Newhart
       Darren R. Newhart, Esq.
       FL Bar No: 0115546

*Co-Counsel for Plaintiff and the Classes*

14

# EXHIBIT A

PDF    Addendum to Contr: ALL OFFERS MUST BE SUBMITTED WIT 2024-02-08

RWI ADDENDUM TO PURCHASE AGREEMENT.pdf

Close

Listing

## 2517 NW 108th Ter Sunrise, FL 33322



| | | | |
|---|---|---|---|
| | Single Family | | |
| **List Price:** | $525,000 | | |
| **MLS #:** | F10422968 | | |
| **Status:** | Active | **MLS Area:** | 3860 |
| **List Broker:** | 802750/Realty Wholesalers Inc | | |
| **Geog Area:** | Plantation (3680-3690;3760-3770;3860-3870) | | |
| **Zoning:** | RS-5 | | |
| **Type:** | Single | | |
| **County:** | Broward | | |
| **Subdivision:** | Woodstock Add Four | | |
| **Beds:** | 3 | **Baths:** | 2/0 |
| **Year Built:** | 1980/Resale | | |
| **Acres:** | | **Lot SqFt:** | 9,873 |
| **Style:** | R30-No Pool/No Water | | |
| **Town/Range:** | 4941 | **DOM:** | 3 |
| **Section:** | 30 | **Parcel Num:** | 494130131110 |
| **Map Coord:** | | **Munic Code:** | |
| **Parcel:** | 1110 | | |

**Recent: 02/26/2024 : New**

| | | | |
|---|---|---|---|
| **Model Name:** | | **SqFt Liv Area:** 1,352 | **SqFt Total:** |
| **Dev Name:** | | | **Apx Lot Size:** |
| **Virtual Tour:** | https://www.propertypanorama.com/2517-NW-108th-Ter-Sunrise-FL-33322/unbranded | | |
| **Brand Virtual Tour:** | | | |
| **Legal Description:** | WOODSTOCK ADDITION NUMBER FOUR 102-14 B LOT 1 BLK 4 | | |
| **Maint Fee Incl:** | | | |
| **Elementary:** | | **Middle:** | |
| **High:** | | | |

### Remarks

| | |
|---|---|
| **Public Remarks:** | ALL OFFERS MUST BE SUBMITTED WITH THE ATTACHED SELLER'S AS-IS ADDENDUM. TURN-KEY 3/2 W/ OUTSTANDING CURB APPEAL. SUN-FILLED KITCHEN WITH CUSTOM WOOD CABINETS & GRANITE COUNTERTOPS. RENEWED BATHROOMS, TILE FLOORING & FRESH PAINT. |
| **Driving Directions:** | MAP VIEW |
| **Broker Confidential:** | FLEX USERS: BE AWARE THAT THIS LISTING WAS SUBMITTED THROUGH MATRIX. NOT ALL THE INFO AND ATTACHMENTS WILL BE TRANSFERRED TO FLEX. PLEASE EMAIL THE OFFICE WITH ANY QUESTIONS AND/OR DOCUMENT REQUESTS. THANK YOU FOR YOUR COOPERATION. THE ESCROW DEPOSIT MINIMUM IS 2.5% OF THE OFFER PRICE ON FINANCE OFFERS AND 10% IF CASH. |

### General Information

| | | | | | |
|---|---|---|---|---|---|
| **Range Price:** | | **LLP:** | **HOPA:** | No HOPA | **Faces:** East |
| **REO:** | No | **Short Sale:** | **Lender Apprv:** | | **Auction:** No |
| **Builder Name:** | | | **Proj Comp Date:** | | **Build Lot/Unit#** |
| **Comm Dev Dist:** | No | **How Paid:** | **Amt Annually:** | | |
| **Waterfront:** | No | | | | **Dock #:** |
| **Water Access:** | | | | | |
| **Garage #:** | 1 | **Carport #:** | **Open Parking:** | | **Covered Prk:** 1 |
| **Garage Desc:** | | | **Carport Desc:** | | |
| **Furnished:** | | | **# Ceiling Fans:** | | **Main Liv Area:** |
| **Parking:** | Driveway | | **Parking Rstrct:** | | |
| **Flooring:** | Laminate, Tile Floors | | | | |
| **Construction:** | Cbs Construction | **Lot Desc:** | Less Than 1/4 Acre Lot | | |
| **Pools:** | No | | | | |
| **Pool Dim:** | | | **Spa:** | | |
| **View:** | Garden View | | **Design Desc:** | One Story | |

### Rooms

| | | | |
|---|---|---|---|
| **Main Lvl Bed:** | 3 | **Main Lvl Bath:** 2 | **Convert Bed:** |
| **Bedroom:** | Entry Level | | |
| **Master Bath:** | | | |
| **Rooms:** | No Additional Rooms | | |
| **Dining:** | | | |

### Additional Information

| | | | | |
|---|---|---|---|---|
| **Pets:** | | **Max # Pets:** | **Wgt Limit:** | **Pet Fee:** |
| **Interior:** | First Floor Entry | | | |
| **Equip/Appl:** | No Equipment | | | |
| **Windows:** | | **Sprinkler:** | | |
| **Guest House:** | No | **Gated:** | No | |
| **Exterior Feat:** | None | | | |
| **Storm Protect:** | | | | |
| **Subdivision:** | No Subdiv/Park Info | | | |
| **Maint Includes:** | | | | |
| **Cable Avail:** | | | | |
| **Heating:** | Central Heat | | | |
| **Cooling:** | Central Cooling | | | |
| **Water:** | Municipal Water | **Sewer:** | Municipal Sewer | |
| **Roof Age/Desc:** | /Flat Tile Roof | | | |
| **Restrictions:** | No Restrictions | | | |

### Financial Information

| | | | | |
|---|---|---|---|---|
| **Terms:** | Cash, Conventional, FHA, VA | | | **Min % Down:** |
| **Assumable:** | | **Tot Assessed Val:** | | **Assess Market Val:** |
| **Total Mortg:** | | **Assoc Fee:** | | **Fee Paid Per:** |
| **Taxes:** | $2,423/2023 | **Tax Info:** | Tax Reflects No Exemptions | |

| | | | | | |
|---|---|---|---|---|---|
| **Type Assoc:** | None | **Applic Fee:** | | **Min Credit Scr:** | |
| **Mbr Req/Fee:** | No | **Cap Contrib YN:** | | **Cap Contrib Amt:** | |
| **Assoc Phn/Web:** | | | | **Assoc Dep:** | |
| **Prop Mgt:** | No / / | **Co-Owner Desc:** | | | |
| **Special Info:** | | | | | |
| **Possession:** | Funding | | | | |

Agent/Office Information

| | | | | |
|---|---|---|---|---|
| **List Office:** | 802750 / Realty Wholesalers Inc | | **Agent Ph:** | (561) 998-7855 |
| **List Agent:** | 528044F / Ben Stern | | **Agent Ph 2:** | |
| **Agt Email:** | realtywholesalers@gmail.com | | **Agt License:** | 528044 |
| **Ofc Addrs:** | 471 Greynolds Cir | | **Office Ph:** | (561) 998-7855 |
| | Lantana, FL 33462 | | **Office Fax:** | (561) 998-7877 |
| **Attr Contact:** | | | **Board:** | BeachesMLS |
| **Web Addrss:** | | | | |
| **CoAgt Email:** | | | | |
| **OLP:** | $525,000 | **Prev Pr:** | **Pr Change Dt:** | 02/26/2024 |
| **ECD:** | | **Contingencies:** | | |
| **Owner Name:** | | | **Owner Phone:** | |
| **Var/Dual Rate:** | No | **Own/Agent:** Yes | **Occup Info:** | |
| **Trans Broker:** | 2.5% | **Buyers Agent:** 2.5% | **Non-Rep Comp:** | 0.1% |
| **List Date:** | 02/26/2024 | **Active Date:** | **Pending Date:** | **Expire Date:** |
| **Listing Type:** | Exclusive Agency | | | **Any Brkr Adv:** No |
| **Internet:** | Yes | **AVM:** No | **Blogging:** No | **Addr on Inet:** Yes |
| **Show Instruct:** | See Broker Remarks, Elect Lockbox-No Appointment, Showing Time | | | **Pets on Premises:** No |

**Agent Full**                                                                    02/29/2024 3:04:38 PM

*The Information is deemed to be reliable, but is not guaranteed.   ©2024 Beaches MLS, Inc.  Listing information is provided for consumer personal, non-commercial use, solely to identify potential properties for potential purchase; all other use is strictly prohibited and may violate relevant federal and state law. Accessibility Issues? We are committed to providing an accessible website.  If you have difficulty accessing content or notice any accessibility problems, please contact our ADA hotline at 844-209-0134 and we will strive to provide the information you need in the format you require.*

# **<u>EXHIBIT B</u>**

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161





## "AS IS" Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

1* **PARTIES:** _____ Realty Wholesalers, Inc _____ ("Seller"),
2* and _____ Kyle D Piper _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*    (a) Street address, city, zip: ___ 2517 ___ NW 108th Ter ___ Sunrise ___ 33322 ___
8*    (b) Located in: ___ Broward County ___ County, Florida. Property Tax ID #: ___ 494130131110 ___
9*    (c) Real Property: The legal description is
10       **WOODSTOCK ADDITION NUMBER FOUR 102-14 B LOT 1 BLK 4**
11
12       together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13       attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14       by other terms of this Contract.
15    (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16       which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17       purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18       and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s), doorbell(s),
19       television wall mount(s) and television mounting hardware, security gate and other access devices, mailbox
20       keys, and storm shutters/storm protection items and hardware ("Personal Property").
21*      Other Personal Property items included in this purchase are:_____
22
23       Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24*   (e) The following items are excluded from the purchase:_____
25    _____
26                          **PURCHASE PRICE AND CLOSING**
27* **2. PURCHASE PRICE** (U.S. currency):.................................................................$ ___ 535,000.00 ___
28*    (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ...........$ ___ 15,000.00 ___
29       The initial deposit made payable and delivered to "Escrow Agent" named below
30*      **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☐ is to be made within ____ (if left blank,
31       then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
32       SHALL BE DEEMED SELECTED.
33*      Escrow Agent Name: _____ **Florida State Realty Group, Inc** _____
34*      Address: ___ 1512 E Broward Blvd, #204A ___ Fort Lauderdale ___ FL ___ 33301 ___ Phone: ___ 954-359-3000 ___
35*      Email: ___ STEVE@FSRG.REALTOR ___ Fax: ___ 954-399-3945 ___
36*   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37*      days after Effective Date ........................................................................$ _____
38       (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8........ ___ 428000 ___
40*   (d) Other:.................................................................................$ _____
41    (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42*      transfer or other Collected funds (See STANDARD S)........................................$ ___ 92,000.00 ___
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44    (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*      ___ 3/1/2024 ___, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46       Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47       the counter-offer is delivered.
48    (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49       initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51       received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52       furnished by each party pursuant to this Contract are delivered ("Closing"). Unless modified by other provisions of

**This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.**   ◆ **TRANSACTIONS**

Authentisign ID: A6933D98-09D6-EE11-85F9-6045BDD68161

53 * this Contract, the Closing shall occur on _____ 3/26/2024 _____ ("Closing Date"), at the time
54 established by the Closing Agent.

**5. EXTENSION OF CLOSING DATE:**

56 (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57 Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58 checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59 extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60 days.
61 (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62 unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63 extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

65 (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66 to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67 personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68 codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69 to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70 shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71 CLOSING OCCUPANCY BY BUYER.
72 (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73 subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74 Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75 shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76 within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77 occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78 election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80 and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81 be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82 Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

83 * **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84 * this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.
85 **IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.**

86 **FINANCING**

**8. FINANCING:**

88 * ☐ (a) This is a cash transaction with no financing contingency.
89 * ☒ (b) This Contract is contingent upon, within ____ 21 ____ (if left blank, then 30) days after Effective Date ("Loan
90 * Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____
91 * (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☒ fixed, ☐ adjustable, ☐ fixed or
92 * adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93 * blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30)
94 years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95 of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96 for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").

97 * (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98 and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99 Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100 Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101 unless Rider V is attached.

102 Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103 be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104 but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105 and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

106 (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107 mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108 of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status

Buyer's Initials KDP                    Page **2** of 13                    Seller's Initials BL
FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors® and The Florida Bar.  All rights reserved.

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.
111 (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.
115 (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.
120 (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.
126 (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.
132* ☐ (c) Assumption of existing mortgage (see Rider D for terms).
133* ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**

135 **9.  CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
136 (a) **COSTS TO BE PAID BY SELLER:**
137 • Documentary stamp taxes and surtax on deed, if any          • HOA/Condominium Association estoppel fees
138 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)   • Recording and other fees needed to cure title
139 • Title search charges (if Paragraph 9(c)(iii) is checked)        • Seller's attorneys' fees
140* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)  • Other:_____
141 • Charges for FIRPTA withholding and reporting
142 If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11,
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
146 (b) **COSTS TO BE PAID BY BUYER:**
147 • Taxes and recording fees on notes and mortgages          • Loan expenses
148 • Recording fees for deed and financing statements          • Appraisal fees
149 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)  • Buyer's Inspections
150 • Survey (and elevation certification, if required)            • Buyer's attorneys' fees
151 • Lender's title policy and endorsements                  • All property related insurance
152 • HOA/Condominium Association application/transfer fees      • Owner's Policy Premium (if Paragraph
153 • Municipal lien search (if Paragraph 9(c)(ii) is checked)        9(c)(iii) is checked)
154* • Other:_____
155* (c) **TITLE EVIDENCE AND INSURANCE: At least _____** (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160 Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents.  For purposes of this Contract "municipal lien search" means a

Buyer's Initials  _____                Page 3 of 13                Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar.  All rights reserved.

**This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.**  TRANSACTIONS

| | |
|---|---|
| 165 | search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded |
| 166 | liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency. |
| 167 | **(CHECK ONE):** |
| 168 * | ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the |
| 169 ★ | premium for Buyer's lender's policy and charges for closing services related to the lender's policy, |
| 170 | endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other |
| 171 | provider(s) as Buyer may select; or |
| 172 * | ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing |
| 173 | services related to Buyer's lender's policy, endorsements and loan closing; or |
| 174 * | ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall |
| 175 ★ | furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a |
| 176 | continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for |
| 177 | reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing |
| 178 | continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not |
| 179 * | be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title |
| 180 | search ordered or performed by Closing Agent. |
| 181 | (d) **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property |
| 182 | surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real |
| 183 | Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. |
| 184* | (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by |
| 185* | _____ at a cost not to exceed $_____. A home |
| 186 | warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in |
| 187 | appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period. |
| 188 | (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body |
| 189 | ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and |
| 190 | ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an |
| 191 | improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being |
| 192 | imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may |
| 193 | be paid in installments **(CHECK ONE):** |
| 194 * | ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. |
| 195 | Installments prepaid or due for the year of Closing shall be prorated. |
| 196 * | ☒ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body |
| 197 | to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be |
| 198 | deemed selected for such assessment(s). |
| 199 | IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED. |
| 200 | This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district |
| 201 | (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to |
| 202 | Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K. |
| 203 | **DISCLOSURES** |
| 204 | **10. DISCLOSURES:** |
| 205 | (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in |
| 206 | sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that |
| 207 | exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding |
| 208 | radon and radon testing may be obtained from your county health department. |
| 209 | (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller |
| 210 | does not know of any improvements made to the Property which were made without required permits or made |
| 211 | pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79, |
| 212 | F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then |
| 213 | Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, |
| 214 | knowledge, or control relating to improvements to the Property which are the subject of such open permits or |
| 215 | unpermitted improvements. |
| 216 | (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or |
| 217 | desires additional information regarding mold, Buyer should contact an appropriate professional. |
| 218 | (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood |
| 219 | zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to |
| 220 | improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" |

**This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.** TRANSACTIONS TransactionDesk Edition

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161

221  or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222  Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223  flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224  through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225* may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
226  Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227  obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228  designation of Property.

229  (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230  required by Section 553.996, F.S.

231  (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232  mandatory.

233  (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS
234  CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'
235  ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236  (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237  PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238  PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239  IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240  PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241  COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242  (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243  Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244  and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245  is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246  under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247  V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248  advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249  FIRPTA.

250  (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251  not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252  sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253  implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254  has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255  building, environmental or safety code violation.

256  **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257  **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258  Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259  IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260  **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
261* (a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___3___ (if left blank, then 15)*
262  *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263  *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264  *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265  *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266  *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267  *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268  *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269  *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270  *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271  *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272  *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273  *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274  *repairs and improvements required by Buyer's lender.*

Buyer's Initials KDP                    Page 5 of 13                    Seller's Initials BL
FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors® and The Florida Bar.  All rights reserved.



(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

**ESCROW AGENT AND BROKER**

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

Buyer's Initials ___KDP___  _____  Page **6** of 13  Seller's Initials ___BL___  _____

FloridaRealtors/FloridaBar-ASIS-6x  Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

**This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.**



Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161

Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

### DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:**

    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

    (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

    (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

    (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

### STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**

    **A. TITLE:**

    (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

Buyer's Initials ___KDP___         Page **7** of **13**         Seller's Initials ___BL___

FloridaRealtors/FloridaBar-ASIS-6x    Rev.7/23 © 2023 Florida Realtors® and The Florida Bar. All rights reserved.

**This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.**  **TRANSACTIONS**
TransactionDesk Edition

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BD068161

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F.  TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a day on which a national legal public holiday is observed.

**G.  FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the right or obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

**This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.**          **TRANSACTIONS**
TransactionDesk Edition

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

442 caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443 earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444 terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445 exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446 The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447 performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448 All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449 up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450 if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451 Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452 shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
453 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457 Contract.
458 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459 (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463 means.
464 (ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468 the survey, flood elevation certification, and documents required by Buyer's lender.
469 (iii) **FinCEN GTO REPORTING OBLIGATION.** If Closing Agent is required to comply with a U.S. Treasury
470 Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471 shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472 Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473 required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474 Closing Agent's collection and report of said information to IRS.
475 (iv) **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment
476 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing**
478 **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
479 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
490 **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492 (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493 imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

Buyer's Initials _KDP_ _____          Page **9** of **13**          Seller's Initials _BL_ _____
FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar.  All rights reserved.



## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

499 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
500 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
501 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
502 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
503 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
504 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
505 maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
506 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
507 shall survive Closing.

508 **L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
509 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
510 including a walk-through (or follow-up walk-through if necessary) prior to Closing.

511 **M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
512 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
513 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
514 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
515 cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
516 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
517 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
518 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the
519 Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
520 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

521 **N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
522 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
523 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
524 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
525 upon, nor extended or delayed by, such Exchange.

526 **O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT
527 EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This
528 Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in
529 interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and
530 delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party
531 shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail,
532 facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures
533 hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic
534 signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

535 **P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
536 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
537 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
538 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
539 to be bound by it.

540 **Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
541 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
542 rights.

543 **R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
544 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

545 **S.  COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including
546 Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing
547 Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent
548 until such amounts have been Collected in Closing Agent's accounts.

549 **T.  RESERVED.**

550 **U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
551 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
552 county where the Real Property is located.

553 **V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
554 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
555 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.    **TRANSACTIONS**

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

556   (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557   from the IRS authorizing a reduced amount of withholding.
558   (i)    No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559   provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560   stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561   home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562   shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563   to the IRS.
564   (ii)   If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565   or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566   reduced sum required, if any, and timely remit said funds to the IRS.
567   (iii)   If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568   provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569   received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
570   on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571   escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572   parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573   directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574   (iv)   In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575   transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576   applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577   disbursement in accordance with the final determination of the IRS, as applicable.
578   (v)   Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579   8288 and 8288-A, as filed.
580   **W. RESERVED**
581   **X.   BUYER WAIVER OF CLAIMS: *To the extent permitted by law, Buyer waives any claims against Seller***
582   ***and against any real estate licensee involved in the negotiation of this Contract for any damage or defects***
583   ***pertaining to the physical condition of the Property that may exist at Closing of this Contract and be***
584   ***subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This***
585   ***provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive***
586   ***Closing.***

587                          **ADDENDA AND ADDITIONAL TERMS**

588 *   **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
589   Contract (**Check if applicable**):

    ☐ A.  Condominium Rider      ☐ M.  Defective Drywall      ☐ X.  Kick-out Clause
    ☐ B.  Homeowners' Assn.      ☐ N.  Coastal Construction Control      ☐ Y.  Seller's Attorney Approval
    ☐ C.  Seller Financing                      Line      ☐ Z.  Buyer's Attorney Approval
    ☐ D.  Mortgage Assumption      ☐ O.  Insulation Disclosure      ☐ AA.  Licensee Property Interest
    ☐ E.  FHA/VA Financing      ☐ P.  Lead Paint Disclosure (Pre-1978)      ☐ BB.  Binding Arbitration
    ☐ F.  Appraisal Contingency      ☐ Q.  Housing for Older Persons      ☐ CC.  Miami-Dade County
    ☐ G.  Short Sale      ☐ R.  Rezoning                              Special Taxing District
    ☐ H.  Homeowners/Flood Ins.      ☐ S.  Lease Purchase/ Lease Option               Disclosure
    ☐ I.   RESERVED      ☐ T.  Pre-Closing Occupancy      ☐ DD.  Seasonal/Vacation Rentals
    ☐ J.  Interest-Bearing Acct      ☐ U.  Post-Closing Occupancy      ☐ EE.  PACE Disclosure
    ☐ K.  RESERVED      ☐ V.  Sale of Buyer's Property      ☒ Other: **Seller's Addendum**
    ☐ L.  RESERVED      ☐ W.  Back-up Contract

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar.  All rights reserved.

**This software is licensed to [Stephen McWilliam -  Florida State Realty Group Inc] www.transactiondesk.com.**  TRANSACTIONS
TransactionDesk Edition

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161

590 * **20. ADDITIONAL TERMS:**
591    **a) Seller will credit Buyer $15,000 at closing as closing cost credit.**
592
593
594
595
596
597
598
599
600
601
602
603
604
605
606
607

608                              **COUNTER-OFFER**
609 *      ☐ Seller counters Buyer's offer.


610              **[The remainder of this page is intentionally left blank.**
611              **This Contract continues with Line 612 on Page 13 of 13.]**

This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.   **TRANSACTIONS**
TransactionDesk Edition

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161

612  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
613  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

614  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

615  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
616  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
617  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
618  *interested persons.*

619  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
620  TO BE COMPLETED.

---

621  **ATTENTION: SELLER AND BUYER**

622  **CONVEYANCES TO FOREIGN BUYERS:** Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes,
623  2023 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by
624  certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the
625  Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of
626  Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly**
627  **sell property in violation of the Act.**

628  **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the**
629  **Act.** Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under
630  the Act.

---

631*  Buyer: *Kyle D Piper*                                                    Date: 02/28/2024
           Kyle D Piper
632*  Buyer: _____                         Date: _____
633*  Seller: _____                        Date: 2/29/2024
           Realty Wholesalers, Inc
634*  Seller: _____                        Date: _____

635   Buyer's address for purposes of notice                    Seller's address for purposes of notice
636*  19469     NW 14th St                                       3100     S Ocean Blvd, #105N
637*  ____Pembroke Pines_____FL____33029____              ____Palm Beach_____FL____33480____
638*

639   **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
640   entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
641   Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
642   agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
643   retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
644   made by Seller or Listing Broker to Cooperating Brokers.

645*  _____Stephen McWilliam_____              _____Ben Z Stern_____
646   **Cooperating Sales Associate, if any**          **Listing Sales Associate**
647*  _____Florida State Realty Group Inc_____         _____Realty Wholesalers Inc_____
648   **Cooperating Broker, if any**                   **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-6x   Rev.7/23 © 2023 Florida Realtors® and The Florida Bar.  All rights reserved.

**This software is licensed to [Stephen McWilliam - Florida State Realty Group Inc] www.transactiondesk.com.**   **TRANSACTIONS**
Transaction Desk Edition

Authentisign ID: A6898D98-99D6-EE11-85F9-6045BDD68161

**REALTY WHOLESALERS, INC. CORPORATE ADDENDUM TO PURCHASE AND SALE AGREEMENT**

The Contract with the Effective Date: _2_ /_29_ /20_24_ between: REALTY WHOLESALERS, INC. ("Seller") and _Kyle Piper_

_____("Buyer") concerning the property described as: _2517 NW 108th Ter, Sunrise_____(the "Property")

**SELLER AND BUYER FURTHER AGREE AS FOLLOWS:**

      THE TERMS SET FORTH HEREIN ARE INCORPORATED AS A PART OF THE CONTRACT FOR SALE AND PURCHASE (THE "CONTRACT") TO WHICH THIS ADDENDUM IS ATTACHED. IN THE EVENT OF ANY INCONSISTENCY OR CONFLICT BETWEEN THIS ADDENDUM AND THE CONTRACT, TYPED OR HAND WRITTEN CONTRACT SPECIAL CLAUSE OR ANY RIDERS OR ATTACHMENTS THERETO (INCLUDING, BUT NOT LIMITED TO, HOMEOWNERS, FHA/VA ADDENDUMS, ETC.), THE TERMS OF THIS ADDENDUM SHALL PREVAIL AND CONTROL.

      BY REVIEWING THIS NOTICE BUYER(S) UNDERSTANDS THAT THE SELLER MAY HAVE ACQUIRED TITLE TO THIS PROPERTY THROUGH FORECLOSURE AUCTION, SHORT SALE, ESTATE SALE, OR SIMILAR PROCESS FOR INVESTMENT PURPOSES ONLY AND HAS NEVER OCCUPIED THE PROPERTY. CONSEQUENTLY, SELLER HAS LIMITED DIRECT KNOWLEDGE REGARDING THE CONDITION OF THE PROPERTY. SELLER IS NOT DELIVERING A DISCLOSURE OF PROPERTY CONDITION IN LIGHT OF THE FACT SELLER HAS NEVER OCCUPIED THE PROPERTY. BUYER SHALL RELY ON THEIR OWN INSPECTIONS.

1.   **REAL PROPERTY DISCLOSURE:** The property is being offered for sale and purchased "as is, where is" including all faults. Seller makes no representations, warranties or guarantees concerning the condition of the property (real or personal), including, but not limited to, mechanical systems, dry basement, existence of mold, foundation, structural, or compliance with any Homeowner Association (HOA) or governmental code, zoning, or building requirements and will make no repairs to the property after entering into this Contract. The Seller has never occupied the property. This section shall serve as the real property disclosure statement.

2.   **CONDITION OF PROPERTY:** Buyer acknowledges that they are relying solely upon their own inspections of such Property and not upon any representation made to them by any person and is purchasing subject Property in the condition in which it now is, without any obligation on the part of the Seller to make any changes, alterations, or repairs thereto. With respect to Section 10(b, j) of the Contract, Buyer understands and acknowledges that, in Seller's efforts to put the Property in marketable condition, Seller may have hired or may hire contractors to renovate and improve the appearance of the Property by, including but not limited to, painting walls, replacing floor coverings, plumbing, electrical, structural and cleaning interior and exterior surfaces, with or without governmental required permits. Buyer hereby acknowledges and agrees that neither Seller nor its agents or contractors shall be held liable for any claims or losses whatsoever that Buyer, Buyer's family members or any persons occupying the Property may incur as a result of discovery of any defects after the delivery of possession of the Property to Buyer.

3.   **INSPECTION PERIOD AND RIGHT TO CANCEL:** (a) Seller authorizes Buyer, at Buyer's expense, to make a complete inspection of the Property within three (3) days from the Effective Date ("Inspection Period") as Buyer shall desire and Seller shall make attempt, but is under no obligation, to have utilities service available during the Inspection Period; (b) Buyer shall be responsible for prompt payment for such inspections and repair of damage to and restoration of the Property resulting from such inspections and this provision shall survive termination of this Contract; and (c) if Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may cancel this Contract by delivering written notice of such election to Seller prior to the expiration of the Inspection Period. If Buyer timely cancels this Contract, the deposit(s) paid shall be returned to Buyer immediately after provision (d) of this section; thereupon, Buyer and Seller shall be released of all further obligations under this Contract, except as provided in section 11. (d) The BUYER shall provide to the Seller, at no cost, upon request by the Seller, complete copies of all inspection reports upon which the Buyer's disapproval of the condition of the property is based. In no event shall the Seller be obligated to make any repairs or replacements that may be indicated in the Buyer's inspection reports. Unless Buyer exercises the right to cancel granted herein, Buyer accepts the Property in its present physical condition, along with any violation of governmental, building, HOA, environmental, and safety codes, restrictions or requirements and shall be responsible for any and all repairs and improvements required by the Buyer's lender or homeowner's insurance underwriter and conformity or non-conformity to current local code or building requirements.

4.   **REPAIRS:** Seller has no responsibility for making repairs to the Property, and Buyer shall not have the right to make any repairs to the Property prior to Closing Date without receiving prior written consent from Seller, which consent may be withheld at Seller's sole and absolute discretion.

5.   **CLOSING PROCEDURE:** Buyer and Seller agree that closing shall be held and the title insurance issued by Weintraub & Weintraub, P.A. 561-988-6411. Title insurance cost shall be no more than promulgated rate. The parties hereby authorize Closing Agent to fax a copy of this Contract to any other party holding any deposit provided for in the Contract and this shall be deemed the necessary consent by Buyer and Seller to authorize the transfer of all deposit money to Closing Agent without further written authorization.

6.   **TITLE EVIDENCE:** Prior to the day of Closing, a title insurance commitment with legible copies of instruments listed as exceptions attached thereto ("The Commitment") and, after Closing, an owner's policy of title insurance may be obtained by Buyer at Buyer's expense. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law. In the

Page **1** of 2

**Buyer's Initial: _____  _____**  acknowledge receipt of a copy of this page.

Authentisign ID: A6938D98-99D6-EE11-85F9-6045BDD68161

event that Title shall be proven unmerchantable, the Seller shall have a period of 180 days after written notification to cure defects in Title (Curative Period) and this sale shall be closed within 10 days after the notice to the Buyer of such curing. Upon Seller's failure to correct unmerchantability within the time limit, the earnest money deposit shall be returned to the Buyer upon demand and all rights and liabilities shall terminate. Notwithstanding anything to the contrary contained in the Contract or this Addendum, Seller is under no obligations to cure any code violation, close any open or expired building permit or procure a building permit for any unpermitted work performed at the Property. Seller sole obligations shall be to secure the release of any recorded code enforcement lien if not otherwise discharged in any foreclosure or legal proceeding or its deletion as a Title Insurance Requirement (without having to cure any underlying violation). The parties agree that release of the lien or the resulting title insurance requirement shall be deemed clear and marketable title.

7.  **Property Tax Disclosure Summary:** Buyer should not rely on the Seller's current property taxes as the amount of property taxes that the Buyer may be obligated to pay in the year subsequent to purchase. A change of ownership or property improvements triggers reassessments of the property that could result in higher property taxes.  If you have any questions concerning valuation, contact the county property appraiser's office for information. If taxes and assessments for the current year cannot be determined, they shall be prorated on the information available at the time of closing. Pro-rations at closing shall be final and any difference will not be adjusted by the Seller after closing. Further, the Buyer waives any and all claims arising from the adjustments or prorations or errors in calculating same that are or maybe discovered after closing.

8.  **CONVEYANCE:** Seller shall convey marketable title to the Real Property by Special Warranty deed.

9.  **DISCLOSURE:** The Seller hereby discloses that its principal is a licensed real estate brokers or agents.

10. **APPRAISAL:** If an appraisal is required for financing, buyer must order and pay for it within five days of contract.

11. **MULTIPLE OFFER SITUATION:** Multiple offers may be received on the Property. The Seller is under no obligation to negotiate offers or close contracts in the order in which they are received, and it is at the Seller's discretion as to which offer, if any, they choose to accept or counter at any given time. Seller reserves the right to actively market the property until such time that the Inspection Contingency is satisfied or removed. In the event that there are any additional contingencies, Seller reserves the right to actively market the property until such time that said contingencies are satisfied or removed.

12. **DELIVERY OF POSSESSION:** Seller shall deliver possession of the Property to Buyer upon funding of the sale on the Closing Date. Seller will provide Buyer with the key to the front door only. Seller does not have possession of any other access keys or remotes to garage doors, mailboxes or common area recreational facilities. There is no personal property included in this sale.

13. **DEFAULT:** In the event of default of either party, the rights of the non-defaulting party (and the Broker, if any) shall be as provided in this subparagraph. (a) Only <u>after</u> the Buyer obtains a loan commitment and if the sale of property is not consummated for any reason other than Seller's default under the Contract, Seller shall be entitled to retain the deposit as Seller's liquidated damages. The parties agree that the liquidated damages provided for herein represent a reasonable estimate of the damages which Seller will incur as a result of such failure to consummate the closing.  The parties acknowledge that the payment of such liquidated damages is not intended as a forfeiture or penalty but is intended to constitute liquidated damages to Seller. The Escrow Agent is authorized to release all deposit money to Seller without further notice or consent by parties, irrespective of whether Buyer and Seller have executed a formal release and cancellation form, if Buyer fails to close on the scheduled Closing Date for any reason. In the event the parties consent in writing to an extension of the Closing Date, for any reason, Escrow Agent is authorized to release all deposit money to be retained by Seller upon receipt of such written extension (without further authorization from either party) in which case the deposit will be credited at closing if Buyer closes on the rescheduled date. Buyer agrees to pay an amount equal to 0.00067 times the purchase price per day at closing as an extension fee. This extension fee is waived if Buyer chooses to finance with Seller's preferred lender and Lender requires an extension of the Closing Date, (b) If sale of the Property to Buyer is not consummated due to  Seller's default under the Contract, then at Buyer's election, the deposit shall immediately be returned to the Buyer upon demand and the Contract shall be deemed terminated. In the event Buyer does not provide written notice to Seller within 10 days of the scheduled Closing Date of Buyer's intention to seek specific performance, then the Buyer's sole remedy shall be limited to return of Buyer's deposit. Any controversy or claim between Buyer and Seller arising out of or relating to this Contract may, at the election of both parties, be settled by mediation or by arbitration. All proceedings, including any litigation arising in connection with this Contract, shall be brought in Palm Beach County, Florida, and shall be conducted pursuant to Florida Statutes. **THE PARTIES HERETO WAIVE THE RIGHT TO A JURY TRIAL.**

**IN WITNESS WHEREOF**, the parties hereto have caused this Addendum to be duly executed as of the date last signed.

*Kyle D Piper*                           02/28/24                                                                                2/29/2024
_____          _____          _____          _____
(BUYER) PRINT ___Kyle D Piper___          (DATE)               (SELLER) PRINT Ben Stern, President
(DATE)


_____          _____
(BUYER) PRINT _____     (DATE)

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

Case No.: 062025CA001922AXXXCE

KYLE PIPER,
on behalf of himself
and all others
similarly situated,

      Plaintiff,

v.

REALTY WHOLESALERS, INC.,
a Florida for-profit corporation and
WEINTRAUB & WEINTRAUB, P.A.,
a Florida professional association,

      Defendants,

_____/

## NOTICE OF APPEARANCE AND
## DESIGNATION OF ELECTRONIC MAIL ADDRESSES

Darren R. Newhart, Esq. of the law firm Newhart Legal, P.A. enters his appearance in the above captioned matter for Plaintiff. Please forward copies of all future pleadings and correspondence to:

> Darren R. Newhart
> Newhart Legal, P.A.
> 14611 Southern Blvd. #1351
> Loxahatchee, FL 33470

Pursuant to Florida Rule of Civil Procedure 1.080 and Florida Rules of Judicial Administration 2.515 and 2.516, Mr. Newhart hereby designates his primary email address for this matter:

1

Darren R. Newhart, Esq. darren@newhartlegal.com

Respectfully Submitted,

/s/ Darren R. Newhart
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
P.O. Box 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile:  (561) 473-2946

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2025, I electronically filed the foregoing document with the Clerk of Court. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ Darren R. Newhart
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
P.O. Box 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile:  (561) 473-2946

## SERVICE LIST

All counsel of record.

# RETURN OF SERVICE

**State of Florida**     **County of Broward**     Circuit Court

Case Number: CACE-25-001922

Plaintiff: **KYLE PIPER, on behalf of himself and all others similarly situated**
vs.
Defendant: **REALTY WHOLESALERS, INC., a Florida for-profit corporation, WEINTRAUB & WEINTRAUB, P.A., a Florida professional association**

For:
JORDAN A. SHAW, ESQ.
SHAW LEWENZ, LLLP
110 SE 6TH STREET
#2900
FT LAUDERDALE, FL 33301

Received by Caplan, Caplan & Caplan Process Servers on the 19th day of February, 2025 at 10:12 am to be served on **WEINTRAUB & WEINTRAUB, P.A. BY SERVING ITS REGISTERED AGENT: WEINTRAUB, PETER B., 7700 CONGRESS AVENUE, STE 1110, BOCA RATON, FL 33487.**

I, Erick Maillard, do hereby affirm that on the **21st day of February, 2025** at **12:00 pm, I:**

CORPORATE-R.A.EMPLOYEE, served a Corporation by delivering a true copy of the **SUMMONS, CLASS ACTION COMPLAINT and EXHIBITS** with the date and hour of service endorsed thereon by me, to: **LISA PESSEL** as **EMPLOYEE OF THE REGISTERED AGENT** for **WEINTRAUB & WEINTRAUB, P.A.**, at the address of: **7700 CONGRESS AVENUE, STE 1110, BOCA RATON, FL 33487**, and informed said person of the contents therein, in compliance with F.S. 48.081(3) (A). Registered agent failed to be available between the statutory hours of 10AM- 12PM. (3)(a) As an alternative to all of the foregoing, process may be served on the agent designated by the corporation under s. 48.091. However, if service cannot be made on a registered agent because of failure to comply with s. 48.091, service of process shall be permitted on any employee of the registered agent. A person attempting to serve process pursuant to this paragraph may serve the process on any employee of the registered agent during the first attempt at service even if the registered agent is temporarily absent from his or her office. Every corporation shall keep the registered office open from 10 a.m. to 12 noon each day except Saturdays, Sundays, and legal holidays, and shall keep one or more registered agents on whom process may be served at the office during these hours. The corporation shall keep a sign posted in the office in some conspicuous place designating the name of the corporation and the name of its registered agent on whom process may be served.

I certify that I am over the age of 18, have no interest in the above action, Under penalty of perjury, I declare that I have read the foregoing and that the facts stated in it are true, that I am a Certified Process Server in good standing in the judicial circuit in which the process was served in the county in which this defendant/witness was served. Pursuant to FS 92.525(2) and 28 USC Section 1746, no notary is required.

**Erick Maillard**
907

**Caplan, Caplan & Caplan Process Servers**
**351 SW 136th Avenue**
**Suite 207**
**Davie, FL 33325**
**(305) 374-3426**

Our Job Serial Number: CPN-2025006061
Service Fee: _____

Filing # 216997166 E-Filed 02/18/2025 10:32:09 AM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

KYLE PIPER,                                    CASE NO.: CACE-25-001922
on behalf of himself                           **CLASS REPRESENTATION**
and all others
similarly situated,

     Plaintiff,

v.

REALTY WHOLESALERS, INC.,
a Florida for-profit corporation,
WEINTRAUB & WEINTRAUB, P.A.,
a Florida professional association,

     Defendants.
_____/

**THE STATE OF FLORIDA:**
TO All and Singular the Sheriffs of said State

     **YOU ARE HEREBY COMMANDED** to serve this **Summons and a copy of the Complaint** in the above styled cause upon the Defendant:

WEINTRAUB & WEINTRAUB, P.A.
**By Serving Its Register Agent**:
WEINTRAUB, PETER B
7700 Congress Avenue
Suite 1110
BOCA RATON, FL 33487

     Each Defendant is hereby required to serve written defenses to the Complaint or Petition on Plaintiff's attorney, whose name and address is:

Jordan A. Shaw, ESQ.
SHAW LEWENZ, LLLP
110 S.E. 6th Street, Suite 2900
Fort Lauderdale, Florida 33301
jshaw@shawlewenz.com

within twenty (20) days after service of this Summons upon Defendant, exclusive of the day or service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

Page 1 of 2

DELIVERED 2/21/2025 12:00 PM
SERVER __ PM
LICENSE 907

FEB 18 2025

WITNESS my hand and seal of said Court _____, 2025.

BRENDA D. FORMAN
As Clerk of said Court

By: _____

As Deputy

BRENDA D. FORMAN

## AMERICANS WITH DISABILITIES ACT OF 1990

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 470, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

Si usted es una persona con discapacidad que necesita un alojamiento a fin de participar en este procedimiento, usted tiene el derecho, sin ningún coste para usted, para el suministro de cierta asistencia. Póngase en contacto con el coordinador de ADA en la Oficina del Administrador Judicial; Broward County Courthouse, 201 SE 6th Street, Room 470, Fort Lauderdale, FL 33301; (954) 831-7721; dentro de 7 días desde la recepción de esta notificación Summons; si es vista o voz alterada, llamada 711.

Si ou se yon moun ak yon maladi/enfimite ki bezwen logement tout pou yo patisipe nan demach sa a, ou gen, gratis pou nou, pou pwovizyon asistans sèten. Souple kontakte kòdonatè ADA a nan biwo tribinal administratè, tribinal eta Broward, 201 SE 6th Street, Espace 470, Fort Lauderdale, nan 33301, (954) 831-7721, nan yon peryòd 7 jou travay de réception de sa Summons, Si ou se tande ou tande vwa ki andikape, rele 711.

EXHIBIT C

IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND
 FOR BROWARD COUNTY FLORIDA

KYLE PIPER, on behalf of himself                    CASE NO: CACE 25-001922
and others similarly situated,
         Plaintiff
v.
REALTY WHOLESALERS, INC.,
a Florida for-profit corporation, and
WEINTRAUB & WEINTRAUB, P.A.,
a Florida professional association
         Defendants,
_____/

### NOTICE OF FILING NOTICE OF REMOVAL

On March 21, 2025, Defendant Realty Wholesalers, Inc. filed the attached Notice of
Removal in the United States District Court for the Southern District of Florida, thereby removing
the case pursuant to 28 U.S.C. §§ 1441 and 1446. A copy of this notice was filed with the Notice
of Removal in the District Court.

This Court may proceed no further with this action unless or until the case is remanded by
the District Court.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served
electronically via the E-Filing Portal on this the 21st day of March, 2025.

**JEFFREY B. SHALEK, ESQ, P.A.**
*Attorney for Realty Wholesalers, Inc.*
3020 NE 32nd Avenue, Suite 226
Ft. Lauderdale, Fl 33308
Telephone: (954) 408-2060


By:____/s/ Jeffrey B. Shalek_____

JEFFREY B. SHALEK
Florida Bar No.  996221
Primary: jeffshalek@gmail.com